UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

ROBERT DEE BURKE, :
:
   Plaintiff, :
:
v. : CASE NO. 3:14-cv-01680-VAB
:
DR. OMPRAKASH PILLAI, ET. AL., :
:
   Defendants. :

## INITIAL REVIEW ORDER

**I.   INTRODUCTION**

Plaintiff Robert Dee Burke ("Burke"), currently incarcerated at MacDougall Correctional Institution ("MacDougall"), filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to his medical needs arising out of an alleged failure to provide him with a particular antibiotic for his acne.

Plaintiff's original Complaint [ECF No. 1] was filed in the United States District Court for the District of New Hampshire and was dismissed by that court for failure to allege facts indicating that any defendant acted with deliberate indifference to a serious medical need. (Order at 3, ECF No. 7.) Plaintiff then filed his First Amended Complaint [ECF No. 10]. The United States District Court for the District of New Hampshire dismissed all claims in the First Amended Complaint asserted against defendants affiliated with the New Hampshire Department of Correction on the ground that the allegations did not concern acts or omissions that occurred in New Hampshire or involved those defendants, and transferred the remainder of the case to this Court. (Order at 1, ECF No. 20; Report and Rec. at 3-4, ECF No. 18.)

Upon receipt of the case, this Court directed Plaintiff to file an amended

1

complaint naming individuals from Connecticut as defendants, and to include factual allegations showing the involvement of those individuals in the alleged deliberate indifference to his medical needs.  (Ruling and Order at 4, ECF No. 27.)  Plaintiff filed a Second Amended Complaint [ECF No. 28] with this Court on December 18, 2014.  The defendants named in the Second Amended Complaint are Dr. Omprakash Pillai, Nursing Supervisor Erin Dolan, Physician's Assistant Kevin McCrystal, Health Services Administrator Rochelle Lightner, and Nursing Supervisor Heidi Greene[1].  For the reasons stated below, the Court dismisses without prejudice the Second Amended Complaint pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief can be granted.

## II.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint . . . [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief."  Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

---

[1] Nursing Supervisor Greene was added as a defendant by operation of Plaintiff's Motion for Supplemental Complaint [ECF No. 30], which the Court granted on April 8, 2015.

marks and citations omitted). A complaint that includes only "'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to liberally construe a *pro se* complaint, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly* . . . we remain obligated to construe a pro se complaint liberally"), the complaint must include sufficient factual allegations to meet the standard of facial plausibility.

## III.   FACTUAL ALLEGATIONS

Plaintiff alleges that he was transferred from New Hampshire State Prison to Walker Correctional Institution in Connecticut on January 13, 2012. (*See* Second Am. Compl., Stmt. of Case ¶ 1, ECF No. 28.) At that time, he was taking an antibiotic called minocycline. (*Id.*) Plaintiff's Second Amended Complaint does not identify the condition for which Plaintiff took minocycline, but his original Complaint and First Amended Complaint state that Plaintiff suffers from acne. (Compl. ¶ 9, ECF No. 1; First Am. Compl. at 1, ECF No. 10).

On January 23, 2012, after being transferred to MacDougall, Dr. Pillai prescribed Plaintiff a different antibiotic called doxycycline. (*See* Second Am. Compl., Stmt. of Case ¶ 2, ECF No. 28.) A nurse at MacDougall who is not named as a defendant told Plaintiff that minocycline was non-formulary[2]. (*Id.* ¶ 3.) In May 2012, Plaintiff was prescribed minocycline again. (*Id.* ¶¶ 4-5.) Plaintiff alleges that refills for his

---

[2] "A 'formulary' is a predetermined list of economical medications that doctors at an institution may prescribe; non-formulary drugs are drugs that do not appear on the approved list of medications." *Rozzelle v. Rossi*, 307 F. App'x 640, 641 n.2 (3d Cir. 2008).

3

minocycline prescriptions lasted for two-month periods, and "then it would be up to 2 weeks before I got back on it." (*Id.* ¶ 5.)

Plaintiff wrote to Health Services Administrator Lightner and Nursing Supervisor Dolan to ensure that his prescription was renewed, but their responses were not satisfactory to Plaintiff. (*See id.* ¶¶ 6-7, 9.)  In February 2013, defendant McCrystal gave Plaintiff doxycycline "that was ordered" and "wouldn't allow to [sic] explain why it didn't work." (*Id.* ¶ 8.)  Plaintiff was told during a meeting with Dr. Pillai and Nursing Supervisor Dolan that his medical condition was not serious. (*Id.* ¶ 10.)  Since June 2013, Plaintiff has been receiving minocycline regularly. (*Id.* ¶¶ 10-11.)

Plaintiff claims to have suffered scars on his head, face, and chest as a result of not being prescribed minocycline upon his arrival at MacDougall. (*Id.* ¶ 12, 14.)  Plaintiff alleges that the lapse in minocycline caused inflammation of cysts and boils, resulting in bleeding and exposure to "possible further infection." (*Id.* ¶ 15.)  Plaintiff claims that he bleeds when shaving, when cutting his hair, and when laying his head on his pillow. (*Id.* ¶ 12.)  Plaintiff has become self-conscious about his facial bleeding and fears name-calling. (*Id.* ¶13.)  He seeks $2,500,000.00 in damages. (*Id.* at 8.)

By order dated April 8, 2015 [ECF No. 31], the Court permitted Plaintiff to supplement his Second Amended Complaint with the following allegations: In October 2014, Plaintiff requested reimbursement for sick call fees.[3] (Mot. Suppl. Compl. ¶ 2.)  In January 2015, Nursing Supervisor Greene wrote on an inmate request form that Plaintiff consulted with a dermatologist for his acne in December 2014 and that, after the consultation, "the nurse" called "the doctor" to review the dermatologist's recommendations. (*See id.* ¶ 4.)  Plaintiff was advised to stop taking minocycline for

---

[3] Plaintiff does not allege that he was denied reimbursement.

two weeks. (*See id.*) Plaintiff saw two nurses and a "Nurse Rose" before he was scheduled for a "culture." (*See id.* ¶ 5.) Plaintiff claims that if "the M.D." had reviewed the dermatologist's recommendations when Plaintiff returned from his consultation, then Plaintiff would not have an inmate request form from a "different nurse after I saw the M.D. on 2-6-15 saying that he is working on my purpose soap and that it was ordered when he changed all my other Meds." (*Id.* ¶ 6.)

## IV. DISCUSSION

Deliberate indifference by prison officials to a prisoner's serious medical condition constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The deliberate indifference standard incorporates an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Second, the official must act with a sufficiently culpable state of mind. *Id.*

### A. Sufficiently Serious Deprivation

A medical need is sufficiently "serious" for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway*, 37 F.3d at 66). A serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* (internal quotation marks omitted). Among the relevant factors for determining whether a serious medical need exists are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a

medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992)).

The Second Circuit has not determined whether acne constitutes a serious medical condition for Eighth Amendment purposes, but courts within the Second Circuit have found that similar skin conditions do not. *See, e.g.*, *Lewal v. Wiley*, 29 Fed.Appx. 26, 29 (2d Cir. 2002) ("persistent rash" did not satisfy requirement to allege serious medical condition); *Whitfield v. O'Connell*, No. 09 CIV. 1925 (WHP), 2010 WL 1010060, at *8 (S.D.N.Y. Mar. 18, 2010) *aff'd*, 402 F. App'x 563 (2d Cir. 2010) ("Warts do not constitute a serious medical need under the Eighth Amendment."); *Benitez v. Ham,* No. 04–CV–1159, 2009 WL 3486379, at *11 (N.D.N.Y. Oct. 21, 2009) ("While [severe body itch] was undoubtedly unpleasant, it simply does not rise to the level of an Eighth Amendment violation."); *Reid v. Nassau Cnty. Sheriff's Dep't*, No. 13-CV-1192 SJF SIL, 2014 WL 4185195, at *20 (E.D.N.Y. Aug. 20, 2014) ("[A] persistent skin rash or infection does not constitute a 'sufficiently serious' medical need."); *Melendez v. Costello*, No. 6:12-CV-6226 MAT, 2013 WL 5937052, at *7 (W.D.N.Y. Nov. 1, 2013) (chronic eczema worsened by failure to prescribe effective medications did not satisfy requirement to allege serious medical need); *Samuels v. Jackson,* 97–CV–2420, 1999 WL 92617, at *1–3 (S.D.N.Y. Feb. 22, 1999) (scabies causing open sores, abrasions, and scarring did not constitute sufficiently serious medical need); *Hill v. Napoli*, No. 6:09-CV-6546-MAT, 2014 WL 1322476, at *15 (W.D.N.Y. Mar. 31, 2014), *reconsideration denied*, No. 6:09-CV-6546-MAT, 2014 WL 6750515 (W.D.N.Y. Dec. 1, 2014) ("Even assuming that Plaintiff did have eczema, it was not sufficiently serious that a failure to treat it could be

expected to lead to substantial and unnecessary suffering, injury, or death.").

Courts in other Circuits have held that acne does not constitute a serious medical condition for Eighth Amendment purposes. *See, e.g.*, *Carr v. Corr. Med. Servs.*, No. CIV.A.3:09-CV-301JVB, 2009 WL 4281455, at *2 (N.D. Ind. Nov. 23, 2009) ("Although it may be uncomfortable or unpleasant, acne does not constitute a serious medical need for purposes of the Eighth Amendment."); *Ware v. Fairman*, 884 F. Supp. 1201, 1206 (N.D. Ill. 1995) (acne was not serious medical condition, and alleged refusal to provide acne medication did not constitute deliberate indifference); *Ferrell v. Heatwole*, No. CIV.A. 7:07CV00451, 2007 WL 2973461, at *1 (W.D. Va. Oct. 9, 2007) ("severe facial and back acne" was not "objectively serious medical need").

The Court concludes that Plaintiff has not alleged the existence of a serious medical condition. First, the weight of authority in this Circuit and others suggests that skin conditions similar to Plaintiff's do not constitute serious medical conditions for Eighth Amendment purposes. Second, Plaintiff has not alleged that his acne caused him any pain, let alone substantial or chronic pain. Third, there is no plausible inference that failure to treat Plaintiff's acne would result in significant suffering, injury, or death.

But that does not end the inquiry. "When the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's underlying medical condition alone" in determining whether the alleged deprivation is sufficiently serious to support an Eighth Amendment claim. *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir.2003) (emphasis in original). "[I]t's the particular risk of harm faced by a prisoner due to the challenged

deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes." *Id.* at 186. "For example, the failure to provide treatment for an otherwise insignificant wound may violate the Eighth Amendment if the wound develops signs of infection, creating a substantial risk of injury in the absence of appropriate medical treatment." *Id.*; *see also Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) ("[I]f prison officials deliberately ignore the fact that a prisoner has a five-inch gash on his cheek that is becoming infected, the failure to provide appropriate treatment might well violate the Eighth Amendment.") "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.* at 187.

Plaintiff alleges that his minocycline treatment was delayed or interrupted when Dr. Pillai prescribed doxycycline instead of minocycline, and when he had to wait two weeks to refill his prescription. (*See* Am. Compl., Stmt. of Case ¶¶ 12, 14-15, ECF No. 28.) As a result of the interruption in his minocycline treatment, Plaintiff alleges that he suffered scars on his head, face, and chest, and now bleeds when he shaves, cuts his hair, and lays his head on his pillow. (*See id.* ¶ 12.) Further, Plaintiff alleges that the "lapse in medication caused inflammation of the cysts and boils causing bleeding and leakage, exposing me to possible further infection." (*Id.* ¶ 15.)

Plaintiff's allegation that the interruption in his minocycline medication exposed him to "possible further infection" brings this case close to the actionable situation contemplated in *Smith* where a lapse in treatment of an otherwise insignificant wound leads to "signs of infection, creating a substantial risk of injury in the absence of

8

appropriate medical treatment." *Smith*, 316 F.3d at 186. However, Plaintiff has not alleged that the affected areas of his skin were infected, becoming infected, or even showing signs of infection. Rather, he merely alleges that there was a possibility of infection. Beyond that, Plaintiff alleges only that the interruption resulted in common symptoms of acne, which the Court has concluded is not a sufficiently serious condition, and which do not create a "condition of urgency" that "may produce death, degeneration, or extreme pain." *Hathaway*, 37 F.3d at 66 (citing *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting)). However, exposure to a risk of infection might form the basis of an Eighth Amendment violation. *Cf. Smith v. Carpenter*, 316 F.3d 178, 188 (2d Cir. 2003) ("[A]n Eighth Amendment claim may be based on a defendant's conduct in exposing an inmate to an unreasonable risk of future harm and . . . actual physical injury is not necessary in order to demonstrate an Eighth Amendment violation.") (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)).

The Court need not, and does not, resolve this question because, for the foregoing reasons, Plaintiff has failed to satisfy the second prong of the deliberate indifference standard.

### B. Culpable State of Mind

The second prong of a deliberate indifference claim is a subjective standard that requires Plaintiff to allege that the defendants acted with a sufficiently culpable state of mind. *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). The required state of mind is equivalent to criminal recklessness. *Id.* The charged official must act or fail to act while actually aware of a substantial risk that serious inmate harm will result. *Id.* The required state of mind is present where the defendant "knows of and disregards an

excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

Mere negligence will not support a claim for deliberate indifference to medical needs. *Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). Thus, a complaint that a physician was negligent in diagnosing or treating a medical condition does not state a valid claim of deliberate indifference under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Furthermore, an inmate's mere disagreement with prison officials as to what constitutes appropriate care does not state a claim cognizable under the Eighth Amendment. *Chance*, 143 F.3d at 703. "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.* "[A]lthough the provision of medical care by prison officials is not discretionary, the type and amount of medical treatment is discretionary." *Perez v. Hawk,* 302 F.Supp.2d 9, 21 (E.D.N.Y.2004); C*ovington v. Westchester Cnty. Dep't of Corr.*, No. 06 CIV. 5369 (WHP), 2010 WL 572125, at *6 (S.D.N.Y. Jan. 25, 2010) (prison officials have broad discretion to choose medical treatment provided to inmates).

First, Plaintiff has not alleged facts plausibly suggesting that defendants Dolan, Lightner, and Greene are "liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of

10

damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). Plaintiff alleges that Dolan's and Lightner's responses to his letters regarding prescription issues gave him "no solid answer to any of my problems" and "no help to my medical needs." (Second Am. Compl., Stmt. of Case ¶¶ 7, 9.) Plaintiff does not allege that Dolan or Lightner were personally involved in providing Plaintiff with doxycycline instead of minocycline, or in failing to timely refill Plaintiff's minocycline prescription. "[A] supervisory official's mere receipt of a letter complaining about unconstitutional conduct is not enough to give rise to personal involvement on the part of the official." *Young v. Choinski*, No. 3:10-CV-606 CSH, 2014 WL 962237 (D. Conn. Mar. 13, 2014) *reconsideration denied in part*, No. 3:10-CV-606 CSH, 2014 WL 4569034 (D. Conn. Sept. 16, 2014) (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir.1997) (prison official who received inmate's letter but forwarded it to subordinate for investigation and response was not personally involved in depriving inmate of constitutional right) and *Smart v. Goord*, 441 F.Supp.2d 631, 642–643 (S.D.N.Y. 2006) (failure of supervisory prison official to take action in response to letters complaining of unconstitutional conduct is insufficient to demonstrate personal involvement)). Because Plaintiff has failed to allege personal involvement by Dolan and Lightner in the alleged deprivation, much less their culpable state of mind with respect to such deprivation, the claims against them are dismissed.

As to Nursing Supervisor Greene, the Court is unable to discern from Plaintiff's allegations what Nursing Supervisor Greene is alleged to have done unlawfully. Plaintiff's claims against Nursing Supervisor Greene are "so confused, ambiguous, vague, or otherwise unintelligible," *Salahuddin*, 861 F.2d at 42, such that that they do

not give her fair notice of Plaintiff's claim.  *See Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 343 (2d Cir. 2006) (complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.").  Accordingly, the Court will dismiss the claims against Nursing Supervisor Greene and grant Plaintiff leave to amend.

Second, Plaintiff has not plausibly alleged that Dr. Pillai or Physician's Assistant McCrystal acted with a sufficiently culpable state of mind.  At most, Dr. Pillai's alleged conduct amounts to mere negligence and therefore does not supply a basis for a deliberate indifference claim.  Even if Dr. Pillai's decision to prescribe doxycycline instead of minocycline rose to the level of medical malpractice, Plaintiff would still have no claim.  That Plaintiff disagreed with Dr. Pillai's judgment and preferred an alternative treatment does not give rise to a constitutional violation.  *See, e.g.*, *Ahlers v. Kaskiw*, No. 9:12-CV-501 GLS/ATB, 2014 WL 4184752, at *10 (N.D.N.Y. Aug. 21, 2014) (plaintiff's disagreement about the appropriate medication for his skin condition was insufficient to create factual issue as to whether medical care providers harbored subjective deliberate indifference to his serious medical needs); *Dearmond v. Obaisi*, No. 11-CV-3412, 2012 WL 1830959, at *2 (C.D. Ill. May 18, 2012) (no plausible inference of deliberate indifference where prison doctor changed inmate's acne medication from one antibiotic to another upon inmate's transfer to new facility).  Similarly, Physician's Assistant McCrystal is alleged to have merely given Plaintiff doxycycline "that was ordered" and not allowed Plaintiff to explain why doxycycline was not effective.  (*See* Second Am. Compl., Stmt. of Case ¶ 8, ECF No. 28.)  In all events, such conduct could amount to no more than mere negligence.

Finally, there is no allegation that the two-week delays in refilling prescriptions were the result of intentional or reckless conduct on the part of Dr. Pillai or any other defendant.  *See Bell v. Jendell*, 980 F. Supp. 2d 555, 562 (S.D.N.Y. 2013) (collecting cases where delay in treatment did not amount to deliberate indifference because prison officials did not act intentionally or recklessly).  Accordingly, Plaintiff's deliberate indifference claim is dismissed for failure to state a claim.

## V.  ORDERS

The Court enters the following orders:

(1)   The Second Amended Complaint [ECF. No. 28] is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).

(2)   Within thirty (30) days of the date of this order, Plaintiff may file an amended complaint provided that he can plausibly allege that each of the defendants (a) was personally involved in the alleged deprivation of treatment, and (b) acted with a sufficiently culpable state of mind with respect to the alleged deprivation of treatment. Such amended complaint will replace any earlier complaint, and therefore must contain all allegations necessary to Plaintiff's claim(s).  If Plaintiff does not file an amended complaint within thirty (30) days of the date of this order, the Clerk shall close this case.

SO ORDERED at Bridgeport, Connecticut this eighth day of April, 2015.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE